[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/14/99
THOMAS  K. KAHN
CLERK

_____

No. 98-8297

_____

D. C. Docket No. 1:97-Cv-3855-WBH

CHARLIE F. WOFFORD,

Petitioner-Appellant,

versus

WILLIE SCOTT, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 14, 1999)**

Before COX, CARNES and HULL, Circuit Judges.

CARNES, Circuit Judge:

Charlie Wofford, a federal prisoner, seeks to have three claims he failed to raise in his first 28 U.S.C. § 2255 motion addressed and decided on the merits. His problem is that § 2255, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), permits a federal prisoner to

file a second motion challenging his sentence or the conviction underlying it in only the narrowest of circumstances. We denied his earlier application to file a second § 2255 motion.

Wofford is now back before us on an appeal from the district court's rebuff of his attempt to use the habeas remedy, as codified in 28 U.S.C. § 2241, to circumvent the second motion requirements of § 2255. His appeal presents us with interesting questions concerning the language in § 2255 that says a habeas application shall not be entertained if a § 2255 motion has been denied, "unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." He contends that the restrictions on second § 2255 motions render that section "inadequate or ineffective to test the legality of his detention" within the meaning of the savings clause, so that he may resort to the § 2241 remedy. We disagree.

## I. FACTUAL AND PROCEDURAL HISTORY

In October 1988, Wofford was indicted in the Middle District of Georgia for conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, possession of a firearm in relation to a drug trafficking crime, and being a felon in possession of a firearm. He pleaded guilty to the conspiracy and felon in possession of a firearm counts in exchange for the government's motion to dismiss the remaining counts. Wofford was subsequently sentenced to a 300-month

term of incarceration on the conspiracy count and a concurrent 60-month term of incarceration on the felon in possession of a firearm count, to be followed by five years of supervised release. He is presently incarcerated in the Northern District of Georgia.

In February 1992, Wofford filed in the Middle District of Georgia a 28 U.S.C. § 2255 motion to vacate his conviction and sentence, arguing that: 1) his plea was involuntary, 2) he received ineffective assistance of counsel because his attorney gave him incorrect advice regarding the length of sentence that would be imposed, and 3) the district court failed to follow Federal Rule of Criminal Procedure 11. That motion was denied without an evidentiary hearing. On appeal, this Court remanded the case to the district court for an evidentiary hearing on the ineffective assistance issue. See Wofford v. United States, 993 F.2d 1555 (11th Cir. 1993).

After an evidentiary hearing on remand, the district court issued an order again denying the § 2255 motion. On appeal from that denial, this Court affirmed, and the Supreme Court denied certiorari. See Wofford v. United States, 43 F.3d 679 (11th Cir. 1994), reh'g en banc denied, 74 F.3d 1257 (11th Cir.), cert. denied, 519 U.S. 826, 117 S. Ct. 88 (1996).

Several months later, after the effective date of the AEDPA amendments to § 2255, Wofford filed in this Court an application for certification to file in the district

court a second § 2255 motion. In that application Wofford raised the following issues: 1) whether the district court lacked jurisdiction to impose a non-parolable sentence followed by supervised release; 2) whether the United States Sentencing Commission's failure to allow the retroactive application of a three-level reduction in sentence for acceptance of responsibility constituted a violation of fundamental fairness and cruel and unusual punishment prohibited by the Fifth and Eighth Amendments to the United States Constitution; and 3) whether the district court's finding that Wofford was a career criminal was improperly predicated upon the court's belief that it could not examine the underlying offenses in making that determination. This Court denied Wofford's application to file a successive motion to vacate, because the motion neither presented newly discovered evidence establishing innocence nor asserted a retroactively applicable new rule of constitutional law that was previously unavailable, as required for second motions by the AEDPA amendments to 28 U.S.C. § 2255.

Thereafter, in a third attempt to obtain collateral relief, Wofford filed a petition for a writ of error coram nobis in the Middle District of Georgia, raising issues identical to those in his second § 2255 motion. That petition was denied, and Wofford did not appeal.

In his fourth and latest effort, Wofford filed in the Northern District of Georgia the present petition, which he styled as one for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On the basis of the same three issues for which this Court has already denied him permission to file a second § 2255 motion, Wofford's present petition argues that his sentence is illegal and has resulted in manifest injustice reflecting error of a most fundamental character. Wofford asserts that § 2241 relief is necessary because no other statutory remedy remains for attacking his sentence.

The magistrate judge issued a Report and Recommendation suggesting dismissal of the § 2241 petition, and the district court subsequently issued its own order doing so. Wofford appeals the district court's order, which we affirm.

## II. DISCUSSION

Wofford's claims are clearly barred from a § 2255 motion proceeding by virtue of the successive motion restrictions enacted by AEDPA and now contained in 28 U.S.C. §§ 2255 and 2244(b). Wofford and the government agree on that, and we do, too, as evidenced by our previous denial of his application for certification to file a second § 2255 motion. The issue is whether he may now resort to habeas relief under § 2241, which depends on the meaning of the following language in § 2255:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion,

5

> to the court which sentenced him, or that such court has denied him relief, <u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention</u>.

(emphasis added). Wofford argues that the underscored language entitles him to have his claims decided in a § 2241 petition, because the second and successive motion bar prevents him from having them decided in a § 2255 motion proceeding, making "the remedy by motion [ ] inadequate or ineffective to test the legality of his detention."

## A. The <u>Hayman</u> Opinion

The history of and purpose behind § 2255, and its relationship to the habeas remedy, which is codified in § 2241, is discussed in <u>United States v. Hayman</u>, 342 U.S. 205, 72 S.Ct. 263 (1952). Section 2255 was enacted in 1948 "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." 342 U.S. at 219, 72 S.Ct. at 272. The practical difficulties with the habeas remedy were "serious administrative problems" resulting from the requirement that those proceedings be brought and decided in the district of incarceration. <u>Id</u>. at 210-19, 72 S.Ct. at 268-72.

Before the enactment of § 2255, the habeas proceeding for a petitioner imprisoned in a district other than the one where the case had been tried was conducted far from where the relevant records and witnesses were. That was not an

6

unusual occurrence. The <u>Hayman</u> Court pointed to the example of a habeas case in which the prisoner alleged he had been coerced into pleading guilty by the United States Attorney and two other federal officers. The hearing had to be held in the Northern District of California where the prisoner was incarcerated, even though the three federal officers involved were located in Texas where the events occurred and the conviction had been obtained. <u>See</u> <u>id</u>. at 213, 72 S. Ct. at 269. Moreover, because habeas proceedings had to be brought and decided in the district of incarceration, the cases were bunched in the few districts where the larger federal prisons were located at that time. As the Supreme Court put it, "the few District Courts in whose territorial jurisdiction major federal penal institutions are located were required to handle an inordinate number of habeas corpus actions far from the scene of the facts, the homes of the witnesses and the records of the sentencing court. . . ." <u>Id</u>. at 213-14, 72 S. Ct. at 269.

The enactment of 28 U.S.C. § 2255 addressed the administrative problems arising from the habeas remedy by substituting for it in federal prisoner collateral attack cases a remedy in the sentencing court. That solution both spread out among the districts the burden of handling such cases and also ensured that in most instances the proceeding would be conducted in the district where the necessary witnesses and records were located. <u>See</u> <u>id</u>. at 210-19, 72 S. Ct. at 268-72. The purpose of § 2255

was to clarify and simplify the procedure and provide an expeditious remedy in the sentencing court without resort to habeas corpus. See id. at 218, 72 S. Ct. at 272. There was no intent to make the § 2255 remedy any different in scope from the habeas remedy that had previously been available to them: "On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." Id. at 219, 72 S. Ct. at 272.

What then of the savings clause language inserted into § 2255? About that, the Hayman opinion is not very helpful. It simply observes without elaboration that "[i]n a case where the Section 2255 procedure is shown to be 'inadequate or ineffective,' the Section provides that the habeas corpus remedy shall remain open to afford the necessary hearing." Id. at 223, 72 S. Ct. at 274 (footnote omitted). We turn to the legislative history for further guidance on the meaning of the savings clause.

B. The Legislative History

8

Section 2255 began fifty-six years ago as a bill proposed by the committee on habeas procedure of the Judicial Conference of the United States. In its original form, that bill provided, in relevant part:

> No circuit or district judge of the United States shall entertain an application for writ of habeas corpus in behalf of any prisoner who is authorized to apply for relief by motion pursuant to the provisions of this section, <u>unless it appears that it has not been or will not be practicable to have his right to discharge from custody determined on such motion because of the necessity of his presence at the hearing, or for other reasons.</u>

Report of the Judicial Conference of Senior Circuit Judges, September Session, 1943, p. 24 (referring to the bill as statute "A") (emphasis added).[1] The Judicial Conference recommended the bill's adoption at the September 1943 session and subsequently reaffirmed that recommendation during its September sessions of 1944 and 1945. <u>See</u> <u>id.</u> at 22; Report of the Judicial Conference of Senior Circuit Judges, September Session, 1944, p. 22; Report of the Judicial Conference of Senior Circuit Judges, September Session, 1945, p. 18. The bill was submitted to the House of Representatives as H.R. 4233 on October 1, 1945 and to the Senate as S. 1451 on October 3, 1945, during the first session of the 79th Congress. <u>See</u> 91 Cong. Rec. 9210

---

[1]The Judicial Conference actually recommended two bills, a jurisdictional bill and a procedural bill. The one relevant to our discussion, and the only one discussed here, is the jurisdictional bill.

9

(1945) (H.R. 4233); 91 Cong. Rec. 9295 (1945) (S. 1451); <u>see</u> <u>also</u> Hon. John J. Parker, <u>Limiting the Abuse of Habeas Corpus</u>, 8 F.R.D. 171, 173 n.8 (1948); Brendan W. Randall, Comment, <u>United States v. Cooper: The Writ of Error Coram Nobis and the Morgan Footnote Paradox</u>, 74 Minn. L. Rev. 1063, 1106 n.71 (1990) (citing the Congressional Record).  At some point, a change was made to the underscored language so that it read: "unless it appears that it has not been or will not be practicable to determine his rights to discharge from custody on such a motion because of his inability to be present at the hearing on such motion, or for other reasons."  <u>See</u> Randall, <u>supra</u>, at 1106 n.73 (quoting H.R. 4233, 79th Cong., 1st Sess. § 2 (1945) and S. 1451, 79th Cong., 1st Sess. § 2 (1945)).  No explanation for the change was given, but it appears to be merely grammatical in nature.

During that first session of the 79th Congress, neither chamber acted on the bill. It was reintroduced in the House during the second session as H.R. 6723, but no action was taken on it then, either.  <u>See</u> 92 Cong. Rec. 6617 (1946).  During the 80th Congress, the bill was reintroduced in the Senate as S. 20.  <u>See</u> 94 Cong. Rec. 7709-10 (1948).  The Senate report accompanying S. 20 gave practical difficulties as the reason for the savings  clause provision allowing recourse to habeas corpus.  The Senate report explained:

> [T]o take care of situations where, for practical reasons, it
> is not advisable to remove a petitioner from prison and to

10

be certain that the remedies afforded prisoners will be fully sufficient, the section goes further than prescribing the motion remedy. In these exceptional instances where it may seem that the motion remedy is not practicable, because of the prisoner's "inability to be present at the hearing on the motion, or for other reasons," habeas corpus is made available. It will be noted that there is provided a wide discretion in the use of habeas corpus where, "for other reasons," the motion remedy seems not "practicable." This will take care of any exceptional practical situation which may arise in any particular case.

S. Rep. No. 1526, 80th Cong., 2d Sess., at 2 (1948).

The report accompanying S. 20 discussed not only the advantages of the proposed new motion remedy, but also its disadvantages, stating that "[t]he main disadvantages of the motion remedy are. . .[t]he risk during or the expense of transporting the prisoner to the district where he was convicted[,] and the incentive to file baseless motions in order to have a 'joy ride' away from the prison at Government expense." S. Rep. No. 1526, at 3. With regard to those disadvantages, the report noted, "It is thought that the provision. . .for habeas corpus (in the district of confinement) where it is not 'practicable to determine his rights * * * on such a motion' will furnish a sufficient discretion in the judge or court before whom habeas corpus is filed to evaluate and defeat the above 'disadvantages' to a large degree." S. Rep. No. 1526, at 3. The Senate Report leaves no doubt that the savings language in the proposed motion remedy at the time of the report was aimed at practical problems

11

and difficulties which might arise in adjudicating collateral attacks in the sentencing court. Nothing in the report suggests that the savings clause, as it then existed, had anything to do with differences in the scope of, or defenses applicable to, the motion remedy compared to the habeas remedy. The Senate passed S. 20, but it died when the House took no action on it. See Randall, supra, at 1106 n.71 (citing the Congressional Record).

Meanwhile, Congress was moving forward on another front with a comprehensive revision of Title 28, the Judicial Code, including the habeas corpus chapter. That revision of the Judicial Code was embodied in H.R. 3214. The pending habeas reform bill, which had been S. 20, was incorporated into the comprehensive revision bill, but with differences. One difference was that the savings clause was reworded as follows:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, <u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.</u>

28 U.S.C.A. § 2255 (1994) (emphasis added).

Unfortunately, we have found nothing in the legislative history explaining why the relevant language was changed or what the new language means. There is some

indication that Congress thought § 2255 incorporated S. 20 without substantive change. For example, the House Report accompanying H.R. 3214, the comprehensive revision legislation, states: "The habeas corpus chapter [of the revision bill] has been rewritten to conform with legislation pending in Congress and approved by the Judicial Conference of the United States." H.R. Rep. No. 308, 80th Cong., 1st Sess., at 7 (1947). In addition, the reviser's notes to Title 28 state that § 2255 "has the approval of the Judicial Conference of the United States [, and its] principal provisions are incorporated in H.R. 4233, Seventy-ninth Congress." H.R. Rep. No. 308, at A180 (Reviser's note § 2255). ( Recall that H.R. 4233 of the 79th Congress was the bill containing the language clearly showing that the savings clause was aimed solely at "practicable problems" such as getting the movant to the hearing.) Thus, the reviser's note, as well as the House Report stating that the comprehensive bill conformed to pending legislation approved by the Judicial Conference, suggest to some extent that the change in the language of the savings clause was not intended to change its previous meaning. Those indications are pretty weak, however, and there are contrary ones.

The most obvious contrary indication is that the new language, encompassing instances when the motion remedy is "inadequate or ineffective," is broader than the old "practicable" problems language, which suggests the new language was intended

to cover more than just practical problems. The same conclusion is suggested by another difference between the earlier version of the provision and the one finally enacted: the provision was changed to explicitly cover cases where the applicant had already applied for and been denied § 2255 relief ("or that such court has denied him relief"). When considered along with the broader language ("inadequate or ineffective"), that change suggests to us the final version of the savings clause was intended to apply in some circumstances where § 2255 relief was unavailable or had been denied for reasons other than practical ones associated with the location of the court. The question is not free from doubt, but we think the better view is that the savings clause is concerned with more than the practical difficulties.[2] We turn now to the question of what circumstances other than those involving practical difficulties are covered by the savings clause.

## C. Decisions From Other Circuits

---

[2]The Second Circuit in Triestman v. United States, 124 F.3d 361, 374-75 (2d Cir. 1997), and the Third Circuit in In re Dorsainvil, 119 F.3d 245, 250 (3d Cir. 1997), rejected arguments by the government that the legislative history of the savings clause established it was limited in application to circumstances where there are practical difficulties in conducting the § 2255 proceeding in the district where the petitioner was sentenced. We agree with those two decisions that the legislative history does not lean the government's way. The Seventh Circuit has observed that "the legislative history is uninformative." In re Davenport, 147 F.3d 605, 609 (7th Cir. 1998). The Seventh Circuit is correct that the intent of the Congress that enacted AEDPA concerning the effect of its provisions on the savings clause of § 2255 is relevant. See id. Like that Court, however, we have been unable to find anything useful in AEDPA's legislative history relating to the savings clause. See 147 F.3d at 609 ( "Again, there is no helpful legislative history.")

14

Four of our sister circuits have had occasion recently to address the meaning of § 2255's savings clause in the wake of the decision in <u>Bailey v. United States</u>, 516 U.S. 137, 116 S. Ct. 501 (1995). That case involved 18 U.S.C. § 924(c)(1), which punishes anyone who uses or carries a firearm during or in relation to a drug trafficking crime. The Supreme Court in <u>Bailey</u> interpreted the use prong of the statute narrowly to require active employment of the firearm, an interpretation different from the one that had been adopted by a number of federal appeals courts. <u>See</u> 516 U.S. at 142-43, 116 S. Ct. at 505. As a result, prisoners who had been convicted under an erroneous interpretation of § 924(c)(1), or who thought they had been, collaterally attacked their convictions as inconsistent with the <u>Bailey</u> decision. Those collateral attacks produced appellate decisions in four circuits discussing the savings clause of § 2255.

The first such decision to be issued was <u>In re Vial</u>, 115 F.3d 1192 (4th Cir. 1997) (en banc), which involved a prisoner's application for a certification permitting him to file a second or successive § 2255 motion in order to raise a claim based on the <u>Bailey</u> decision, which had been issued after his first § 2255 motion had been filed and denied. The Fourth Circuit denied the application to file a second motion, because the <u>Bailey</u> decision did not fit within the narrow exceptions for second or successive § 2255 motions as that remedy had been tightened up by

AEDPA. In the course of its opinion, the Court noted § 2255's "inadequate or ineffective" remedy savings clause, and said "the remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision. . .or because an individual is procedurally barred from filing a § 2255 motion. . . ." 115 F.3d at 1194 & n.5 (internal citations omitted).

Next came the Third Circuit's decision in In re Dorsainvil, 119 F.3d 245 (1997), which was also issued in response to an application for certification to file a second or successive § 2255 motion raising a Bailey claim. After concluding that the applicant had failed to meet the requirements for filing such a motion, the Court turned to his alternative argument that the restrictions AEDPA placed on second and successive § 2255 motions violated the Due Process Clause of the Fifth Amendment and the Suspension Clause of Article I, Section 9 of the Constitution.

The Third Circuit feared that if no other avenue of judicial review were available to one who was factually or legally innocent as a result of an intervening statutory interpretation, "we would be faced with a thorny constitutional issue." 119 F.3d at 248. It avoided that issue by concluding that "under narrow circumstances, a petitioner in Dorsainvil's uncommon situation may resort to the writ of habeas corpus codified under 28 U.S.C. § 2241." Id. The "uncommon situation" that the

16

Third Circuit said was within the savings clause is more particularly described, and

the holding of the decision limited,  in the following quotation from the opinion:

> We do not suggest that § 2255 would be "inadequate or ineffective" so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255.  However, allowing someone in Dorsainvil's unusual position–that of a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate, even when the government concedes that such a change should be applied retroactively–is hardly likely to undermine the gatekeeping provisions of § 2255.

Id. at 251.

The Second Circuit's turn to say what the  § 2255  savings clause means in the

context of a second motion Bailey claim came in Triestman v. United States, 124 F.3d

361 (1997).  Going  beyond the facts of that case, the Second Circuit announced a

broad rule under which  § 2241  will be available  to free a § 2255 movant  from

AEDPA's  restrictions  on second  or successive motions whenever failure to permit

a remedy  would "raise serious constitutional questions."  124 F.3d at 377. The Court

thought that not allowing a Bailey claim to be raised by a prisoner whose first § 2255

motion was adjudicated  before that decision was announced  would deny judicial

review to "a person who can prove his actual innocence on the existing record – and

who could not have effectively raised his claim of innocence at an earlier time." Id.

at 363. Under the Second Circuit's view, such a denial would raise "serious constitutional questions," rendering § 2255 "inadequate or ineffective" and allowing recourse to § 2241.

Perhaps concerned with the broad implications of its rule, the Second Circuit in Triestman stated that its holding "does not, of course, mean that habeas corpus is preserved whenever a federal prisoner faces a substantive or procedural barrier to § 2255 relief." Id. at 376. If it did mean that, the Court conceded, "then Congress would have accomplished nothing at all in its attempts – through statutes like the AEDPA – to place limits on federal collateral review." Id. The Court reassured itself that "the cases in which serious questions as to § 2255's constitutional validity are presented will be relatively few, [so] our interpretation does not permit the ordinary disgruntled federal prisoner to petition for habeas corpus." Id. at 377-78. But the Second Circuit's rule does lift the restrictions Congress placed upon second or successive motions whenever a judge believes "justice would seem to demand a forum for the prisoner's claim in so pressing a fashion as to cast doubt on the constitutionality of the law that would bar the § 2255 petition." Id. at 378.

We agree with the Seventh Circuit's criticism of the Triestman rule as "too indefinite" to meet "the needs of practical judicial enforcement." In re Davenport, 147 F.3d 605, 611 (7th Cir. 1998). A "serious constitutional question" standard is only

18

about as definite as a "tough issue" or "hard set of circumstances" standard would be. Moreover, there is no apparent logical or textual nexus between the crucial "inadequate or ineffective" language of § 2255 and the difficulty of any constitutional issue that may arise because of that language's interpretation.

The Seventh Circuit was the fourth federal appeals court to grapple with the savings clause issue in the context of a <u>Bailey</u> claim. <u>In re Davenport</u>, 147 F.3d 605 (7th Cir. 1998), involved two federal prisoners, each of whom had unsuccessfully filed a § 2255 motion previously and was seeking more collateral review in a § 2241 proceeding. One claimed the armed career criminal act had been improperly applied to him and the other claimed he was due relief under the <u>Bailey</u> decision, which had come out after his § 2255 motion had been denied. <u>See</u> id. at 607. Both of them were barred from filing a second or successive § 2255 motion by the AEDPA restrictions on that remedy. <u>See</u> <u>id</u>. at 607-08. So, the Court went right to the issue of whether the savings clause , which it called the "escape hatch," permitted the filing of a § 2241 petition in those circumstances.

The Seventh Circuit recognized at the outset what the savings clause could not mean. Addressing the argument that the § 2241 remedy is available whenever the AEDPA restrictions on second or successive motions bar a § 2255 motion, the Court said: "That can't be right; it would nullify the limitations." <u>Id</u>. at 608. As for what

is right, the Seventh Circuit started with the premise that the essential function of habeas corpus is to give a prisoner "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." Id. at 609. A reasonable opportunity to raise an issue on appeal or in a first § 2255 motion, or within the AEDPA restrictions in a second motion, is enough to serve that essential function and satisfy the Constitution, the Court explained. See id. at 609. The petitioner who was attempting to pursue the armed career offender innocence claim had opportunities to do so in his direct appeal and in his § 2255 motion. See id. at 609-10. Accordingly, his claim did not fit within the savings clause, and he was not permitted access to the § 2241 habeas remedy.

The Seventh Circuit concluded that the Bailey claim, which was put forward by the other petitioner, was a different matter. It reasoned that settled circuit precedent going the opposite way on the Bailey issue had effectively deprived that petitioner of any reasonable opportunity to obtain a reliable judicial determination of it. See id. at 610-11. The Court permitted that Bailey claim to be pursued in a § 2241 habeas proceeding, but the rule it adopted was a narrow one. The holding in Davenport, read against the facts of that case, is limited to circumstances in which a Supreme Court decision has changed the law of a circuit retroactively in such a way that a prisoner stands convicted for a nonexistent offense, and the prisoner had no

20

reasonable opportunity for a judicial remedy of that fundamental defect before filing the § 2241 proceeding. See id. at 611. With virtually all claims – Bailey is a rare exception – a petitioner will have had "an unobstructed procedural shot at getting his sentence vacated." Id. at 609. That does not mean he took the shot, or even that he or his attorney recognized the shot was there for the taking. All the Constitution requires, if it requires that much, is that the procedural opportunity have existed.

We think the Seventh Circuit's Davenport approach is better reasoned than those of the other circuits, and its rule has the advantage of being specific. We adopt it insofar as it comports with the following holding: The savings clause of § 2255 applies to a claim when: 1) that claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion.[3]

---

[3]Once the savings clause of § 2255 applies to open the portal to a § 2241 proceeding, the proper inquiry in that § 2241 proceeding will be whether the petitioner can establish actual innocence of the crime for which he has been convicted, as "actual innocence" is defined in Bousley v.United States, 523 U.S. 614, 118 S. Ct. 1604 (1998). The Supreme Court held in Bousley that even in a first collateral attack proceeding, a petitioner who had procedurally defaulted a Bailey claim by not raising it on appeal was required to prove actual innocence before obtaining relief on that claim. It would make no sense for a petitioner who had defaulted on a claim twice (on direct appeal and in an previous § 2255 proceeding) to be better off than one who had defaulted the claim only once (on direct appeal).

The Seventh Circuit in <u>Davenport</u> suggested in dicta that the savings clause might apply to some claims involving a "fundamental defect" in sentencing where the petitioner had not had an opportunity to obtain judicial correction of that defect earlier. <u>See</u> 147 F.3d at 611. We need not decide whether the savings clause extends to sentencing claims in those circumstances, or what a "fundamental defect" in a sentence might be. It is enough to hold, as we do, that the only sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent.

## D. Application to this Case

Wofford was not convicted of any crime which a retroactively applicable Supreme Court decision overturning prior circuit precedent has made clear is nonexistent. All of his claims are sentencing claims, none of which rest upon a circuit law-busting, retroactively applicable Supreme Court decision. Wofford had a procedural opportunity to raise each of his claims and have it decided either at trial or on appeal. For these reasons, Wofford's effort does not fit with the savings clause of § 2255. He is attempting to use § 2241 simply to escape the restrictions on second or successive § 2255 motions. All four of the circuits that have ventured an opinion recently on the meaning of the savings clause agree that it does not exist to free a prisoner of the effects of his failure to raise an available claim earlier. <u>See</u>

22

Vial, 115 F.3d at 1194 n.5; Dorsainvil, 119 F.3d at 251; Triestman, 124 F.3d at 376;

Davenport, 147 F.3d at 609.  So do we.

### III. CONCLUSION

The denial of the petition for relief under  28 U.S.C. § 2241 is AFFIRMED.

COX, Circuit Judge, specially concurring:

The majority opinion heroically formulates a general rule to harmonize § 2255's procedural hurdles and its "savings clause." I hesitate to be so bold, however, when the evidence of congressional intent is as sparse as what we have here.

I agree that Wofford's challenges to his sentence are not cognizable under § 2241. I also agree that the remedy by motion under § 2255 is not rendered "inadequate or ineffective" because an individual is procedurally barred from filing a second or successive § 2255 motion. That's all I need decide in this case, and I therefore would not attempt to formulate a general rule to harmonize the statutory language.