[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 26, 2006
THOMAS K. KAHN
CLERK

No. 05-10986
Non-Argument Calendar

_____

D. C. Docket No. 04-00798-CV-RWS-1

ERNEST B. FORD,

Petitioner-Appellant,

versus

WARDEN R. WILEY,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 26, 2006)**

Before TJOFLAT, ANDERSON, and BLACK, Circuit Judges.

PER CURIAM:

Ernest B. Ford, a federal prisoner,[1] appeals pro se the dismissal in part, and

_____

[1]Although Ford was convicted of D.C. Code violations, the U.S. Parole Commission ("Commission") had authority over his parole. See The National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub.L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745.

denial in part, of his habeas corpus petition, which was filed pursuant to 28 U.S.C. § 2241, challenging: (1) his 1989 convictions and aggregate 19 years to life sentence for involuntary manslaughter and 2 counts of assault with a dangerous weapon; and (2) the Commission's denial of parole. Ford asserted that D.C. Code § 23-110 was inadequate to address his challenges to his convictions and sentence because it was not designed to allow a petitioner to challenge, as here, the court's jurisdiction over him, or the government's "standing." He further argued that he was unable to challenge the D.C court's jurisdiction over him prior to the Supreme Court's decision in United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785 (2002) (holding that a defective indictment does not deprive a court of jurisdiction). Ford further averred that, because he had not received an evidentiary hearing on the merits of his claims regarding his conviction and sentence, before the D.C. Court of Appeals or the United States Supreme Court, he was entitled to raise them again.

The record shows that, prior to Ford becoming eligible for parole, the Commission prepared an initial pre-hearing assessment indicating that, in June 1987, Ford shot his girlfriend several times, resulting in her death and, as he was leaving her apartment, he also shot her nine-year-old son, a neighbor in the front door of his residence, and a paperboy who refused to sell his cart to Ford.

2

According to the Commission's assessment, a psychological examination of Ford suggested that he "had more work to do from a personality standpoint to minimize the risk of any spontaneous violent reaction[s] to sensitive situations" and needed rehabilitation. Utilizing D.C. Code guidelines for offenders at initial hearings, the parole examiner: (1) calculated Ford's total salient factor score ("SFS") at ten;[2] (2) set Ford's base point score at five (calculated as follows: zero points for risk of recidivism, two points for "violence in the current offense," and three points because "current offense was high level or other violence with death of victim resulting"); and (3) deducted two points for superior program achievement, resulting in a total point score of three.

The Commission denied parole, finding that, although with a base point score of 5 the rehearing guidelines indicated that Ford should receive a rehearing within 18-24 months, a departure from the guidelines was warranted for the following reasons:

> You are a more serious risk than indicated by your [b]ase [p]oint [s]core in that the offense behavior demonstrated that you have a major psychiatric disorder (depression aggravated by drug use) that makes you a significant threat for renewed homicidal behavior. Your offense was a lethal rampage exhibiting unusual cruelty in that not

[2]This score consisted of: (1) 3 points for having no prior convictions; (2) 2 points for having no prior commitments of more than 30 days; (3) 3 points for being age 30 at the time of the commission of the offense; (4) 1 point for no recent commitments; and (5) 1 point for not being on parole at the time of the commission of the offense.

only did you shoot and kill one person, but three other persons (two of whom were children) were wantonly shot and wounded placing additional lives in jeopardy. You claim no memory of this event. Treatment programs currently available are unlikely to alter the high level of risk in your case.

The Commission continued the proceedings for a rehearing in August 2005, after Ford had served 60 months from his parole eligibility date.

In his § 2241 petition regarding the denial of parole, Ford claimed that the Commission: (1) unlawfully used dismissed counts as a basis for keeping him in prison; and (2) abused its discretion by departing from the guidelines when it denied him parole because: (a) it should have set a release date, pursuant to § 235(b)(3) of the Sentencing Reform Act of 1984 ("SRA"), Pub.L. No. 98-473, Title II, 98 Stat. 1987 (1984);[3] (b) it improperly double-counted his salient factor and risk-factor scores; and (c) there was no factual basis for its determination that he had a major psychiatric disorder.

The district court dismissed Ford's challenges to his convictions and sentence as incognizable under § 2241, since he had not demonstrated that the remedy under § 23-110, the functional equivalent of 28 U.S.C. § 2255, was

---

[3]Section 235(b)(3) of the SRA, when originally enacted, provided:
The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline.
SRA § 235(b)(3), Pub. L. No. 98-473, 98 Stat. 1987 (1987).

4

inadequate or ineffective. The district court next determined that the Commission did not: (1) use dismissed counts against Ford improperly when denying him parole, as it was entitled to take into consideration any evidence that existed at the time of sentencing; (2) abuse its discretion when it departed from the guidelines with respect to Ford's rehearing date, based on the aggravating factors in the case that showed that Ford was a more serious risk than reflected by his guideline score; (3) engage in "double counting" when it decided that the guidelines did not take into account the fact that Ford's crime included unusual cruelty and multiple victims, two of whom were children; or (4) abuse its discretion by determining that Ford suffered from depression, exacerbated by drug use, as its finding was supported by the evidence. Finally, the district court found that, because it was not clear that § 235(b)(3) of the SRA was applicable to Ford, who was a D.C. Code offender, Ford was not entitled to a release date based on the SRA. Accordingly, the district court found that the Commission did not abuse its discretion by setting a reconsideration date, instead of a release date, for Ford.

On appeal, Ford argues that the district court erred by finding that he had failed to demonstrate that the remedy under D.C. Code § 23-110 was inadequate. Ford claims he demonstrated that when he pled guilty, he did not have a means to challenge the jurisdiction of the court, or the standing of the government, pointing

5

out that Cotton represented a change in the law after he was convicted. Next, Ford argues that the Commission abused its discretion by denying him parole, where his SFS score indicated that he was entitled to parole at his initial hearing, and he met all of the criteria according to D.C parole law. Ford asserts that the Commission's discretion was limited by Cosgrove v. Smith, 697 F.2d 1125 (D.C. Cir. 1983), and Cosgrove v. Thornburgh, 703 F. Supp. 995 (D.C. Cir. 1988), and argues that the Commission abused its discretion by: (1) imposing a harsher standard than the federal standard when it departed from the guidelines; (2) failing to follow D.C. parole laws and regulations, basing its decision solely on punitive considerations, instead of a rehabilitative standard; and (3) considering events outside of his convictions and engaging in "double-counting" of his criminal conduct.

Ford further contends that the Commission's finding that he was a "significant threat for renewed homicidal behavior" was unsupported by the record, which showed that he was a low risk for recidivism. Finally, Ford argues that, under the version of § 235(b)(3) that was applicable at the time when he committed the offenses, the Commission was required to set a release date for him, in accordance with the applicable parole guidelines. Ford emphasizes that § 235(b)(3) does not distinguish between D.C. and federal prisoners and states that the Commission *shall* set a release date for individuals such as Ford, who will be in

6

the Commission's jurisdiction on the day before the expiration of the Commission.

## I. Challenges to Convictions and Sentence

We "review <u>de novo</u> the district court's denial of habeas relief under §

2241." <u>Skinner v. Wiley</u>, 355 F.3d 1293, 1294 (11th Cir.), <u>cert.</u> <u>denied</u> 541 U.S.

1036 (2004). Prisoners such as Ford, who are convicted and sentenced by the D.C.

Superior Court, may seek collateral review of such convictions pursuant to D.C.

Code § 23-110, which is comparable to the review authorized by 28 U.S.C. § 2255.

See <u>Swain v. Pressley</u>, 430 U.S. 372, 377-78, 97 S.Ct. 1224, 1227-28, 51 L.Ed.2d

411 (1977). Section 23-110 provides, in relevant part:

> A prisoner in custody under sentence of the Superior Court claiming
> the right to be released upon the ground that (1) the sentence was
> imposed in violation of the Constitution of the United States or the
> laws of the District of Columbia, (2) the court was without jurisdiction
> to impose the sentence, (3) the sentence was in excess of the
> maximum authorized by law, (4) the sentence is otherwise subject to
> collateral attack, may move the court to vacate, set aside, or correct
> the sentence.

D.C. Code § 23-110(a). Federal courts, therefore, are generally without

jurisdiction to entertain motions to vacate, set aside, or correct a sentence imposed

by the D.C. Superior Court.  See <u>Swain.</u> at 377-78, 97 S.Ct. at 1227-28.  However,

a prisoner can attack the lawfulness of his conviction or sentence through § 2241

by employing § 23-110's "savings clause," when the remedy under § 23-110 is

"inadequate or ineffective to test the legality of his detention." D.C. Code § 23-

110(g).

A petitioner has an affirmative duty to prove that an otherwise available remedy is inadequate or ineffective, and that this insufficiency entitles him to proceed under the savings clause. McGhee v. Hanberry, 604 F.2d 9, 10 (5th Cir. 1979) (§ 2255 context). The savings clause only applies to the few cases where "1) that claim is based on a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion." Wofford v. Scott, 177 F.3d 1236, 1244 (11th Cir 1999). We have indicated that this rule is a "narrow one." See id. at 1244.

Where this exception does apply, the petitioner is required to demonstrate "actual innocence" of the crime for which he was convicted, as that term is defined in Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604 (1998). Wofford, 177 F.3d at 1244 n.3. In cases where the petitioner is seeking relief under § 2241 from a federal (or D.C. Superior Court) conviction or sentence, "actual innocence" is defined as "factual innocence, not mere legal insufficiency." Sawyer v. Holder, 326 F.3d 1363, 1367 (11th Cir. 2003) (citing Bousely, 523 U.S. at 623, 118 S.Ct. at 1611).

Ford failed to show that § 23-110 was inadequate or ineffective to test the legality of his detention, thus relief was not available pursuant to § 2241 regarding Ford's convictions and sentence. Even if Ford had demonstrated the inadequacy of § 23-110, he was unable to show his "actual innocence" with regard to the crimes of which he was convicted. Accordingly, the district court correctly dismissed those claims.

## II. Commission's decision

"Parole is not a right, but an expectation that may be granted by the Commission." Glumb v. Honsted, 891 F.2d 872, 873 (11th Cir. 1990) (internal citations omitted). "A federal court will not reverse a decision of the Commission unless it involves flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion." Id. (internal citations omitted).

In August 1998, pursuant to the Revitalization Act, the authority to make parole decisions concerning D.C. code offenders was transferred to the Commission. See Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir. 1998). The Revitalization Act further provided the Commission with the

"exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons," and the Commission developed its own guidelines for making parole decisions for D.C. prisoners, which are codified at 28 C.F.R. § 2.80. Revitalization Act, § 11231(a)(1). The regulations provide that, "[i]n determining whether an eligible prisoner should be paroled, the Commission shall apply the guidelines set forth in this section." 20 C.F.R. 2.80(b). Under the D.C. guidelines, at the initial hearing, the guideline recommendation for a prisoner with a total point score of three is to "deny parole and schedule rehearing." With a base point score of five, the guidelines direct that a rehearing should be set in 18-24 months. In addition, according to the guidelines, a SFS score of ten represents "very good risk of recidivism." 28 C.F.R. § 2.80.

The regulations further provide, however, that:

The Commission may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines . . . [and] in some cases, an extreme level of risk presented by the prisoner may make it inappropriate for the Commission to contemplate a parole at any hearing without a significant change in the prisoner's circumstances.

20 C.F.R. § 2.80(n)(1). Factors that may warrant a decision above the guidelines include: (1) "[u]nusual cruelty to the victim (beyond that accounted for by scoring the offense as high level violence), or predation upon extremely vulnerable

10

victim;" and (2) "[u]nusual propensity to inflict unprovoked and potentially

homicidal violence, as demonstrated by the circumstances of the current offense."

20 C.F.R. § 2.80(n)(2)(ii)(C), (D). The regulations further provide: "When a

prisoner has been denied parole at the initial hearing and all subsequent

considerations, . . . the prisoner shall be released at the expiration of his or her

imposed sentence." 28 C.F.R. § 2.87. D.C.'s statutory law of parole provides:

> Whenever it shall appear to the Board of Parole that there is a
> reasonable probability that a prisoner will live and remain at liberty
> without violating the law, that his release is not incompatible with the
> welfare of society, and that he has served the minimum sentence . . .
> the Board *may* authorize his release on parole.

D.C. Code § 24-204(a) (emphasis added).

While Ford may have been eligible for supervised release at the time of his

hearing, under the D.C. parole guidelines Ford was not *entitled* to parole. The

Commission's decision to depart from the rehearing range was based on

permissible aggravating factors, and the Commission did not abuse its discretion

by denying Ford parole. In addition, the D.C. parole statutes and regulations, and

not the SRA, controlled the Commission's assessment of Ford's parole, thus the

Commission was not bound to set a release date for Ford.

Finally, with regard to the issue of "double counting," we have held that

"[i]mpermissible double counting occurs only when one part of the Guidelines is

11

applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." See United States v. Matos-Rodriguez, 188 F.3d 1300, 1309 (11th Cir. 1999)(analyzing the double counting issue in the context of the Sentencing Guidelines )(internal citations and quotations omitted). In this case, the aggravating factors considered by the Commission were not otherwise accounted for in the guideline score. Ford's guideline score did not consider the multiple victims involved in his crimes, and even if charges against those victims were dismissed as part of a plea agreement–as they were in Ford's case–the Commission is permitted to consider a broad range of evidence in reaching its decision. See Page v. United States Parole Commission, 651 F.2d 1083 (5th Cir. 1981); Tobon v. Martin, 809 F.2d 1544, 1545 (11th Cir. 1987) ("The law is clear that the Parole Commission may consider any relevant evidence or information in reaching its decision.").

Upon careful review of the record and consideration of the parties' briefs, we discern no reversible error. Accordingly, we affirm the district court's dismissal of Ford's challenges to his convictions and sentence and denial of Ford's petition as to his challenge to the denial of parole.

**AFFIRMED.**