PROCTOR, District Judge,
concurring:
I agree with the Majority’s conclusion that the district court did not have jurisdiction to entertain McCarthan’s habeas petition. In reaching this correct judgment, however, the Majority (in its otherwise well-written opinion) finds that McCarthan met the first step of the test adopted in Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013),[1] but failed to establish the fourth. On this single point I .disagree and write separately to. state why we should also conclude that McCarthan has not satisfied step one of Bryant.
Congress has enacted substantial limits on the jurisdiction of federal courts to hear federal prisoners’ section 2241 petitions. As the Majority has acknowledged, section 2255’s savings clause severely limits a federal court’s subject-matter jurisdiction to entertain a federal prisoner’s section 2241 habeas petition. For a petitioner to establish jurisdiction, he must show that the remedy in section 2255 “is inadequate or ineffective to test the legality of his detention.” Maj. Op. at 1244 (quoting 28 U.S.C. § 2255(e)); see Williams, 713 F.3d at 1340. In Bryant, we established a five-step test[2] that district courts in our Circuit must *1258 apply in determining what a petitioner like McCarthan must show in order to establish application of section 2255’s savings clause. Id. at 1274 (synthesizing our previous decisions in Wofford v. Scott, 177 F.3d 1236 (11th Cir.1999), Gilbert v. United States, 640 F.3d 1293 (11th Cir.2011), and Williams v. Warden, 713 F.3d 1332 (11th Cir.2013) in determining “what the statutory terms in § 2255(e)’s savings clause mean and how to read § 2255(e) in a way that does not eviscerate or undermine § 2255(h)’s restrictions on second or successive § 2255 motions but also affords some meaning to the savings clause.”).
Turning to the plain language Bryant’s first step, McCarthan is required to show that “throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit’s binding precedent had specifically addressed [his] distinct prior state conviction that triggered § 924(e) and had squarely foreclosed [his] § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a).” Bryant, 738 F.3d at 1274. The Majority reads this language to contain a restrictive clause modifying the term “binding precedent.” I disagree. Although this language from Bryant does indeed contain a restrictive clause, that restrictive clause — “that triggered § 924(e)” — restricts (that is, defines) the term “distinct prior state conviction.” In other words, the clause “that triggered § 924(e)” defines which “distinct prior state conviction” must be specifically addressed by our precedent. A fair reading of this language does not permit us to say that the term “distinct prior state conviction” is itself restrictive. It follows that in order to satisfy step one of Bryant, a petitioner must point to a “distinct prior state conviction” that our Court’s binding precedent had specifically addressed, and that our binding precedent had foreclosed an earlier assertion that the “distinct prior state conviction” at issue was improperly counted as a section 924(e) predicate conviction.[3]
It is obviously of no moment if the distinct prior state conviction challenged is only one of many (here, at the time of sentencing, five, and, at present, no less than three) ACCA predicate convictions *1259 that would themselves support the enhancement. In such an instance, correcting any error with respect to the counting of that distinct challenged conviction would not change the ACCA calculus. And that is precisely the situation McCarthan faces here. By force of law and logic, his escape conviction could not have been the distinct conviction that triggered section 924(e)’s application (and I use the clause “that triggered section 924(e)’s application” in a restrictive sense) because there were, and continue to be, at least three other convictions that support application of the enhancement.
Again, the Majority’s response to this reading of the Bryant test does nothing more than point out that step one and four are repetitive. I am in complete agreement. This only supports a conclusion that the test announced in Bryant is both clumsy and indefensible as a matter of textual interpretation.
I ■ have no dispute with the Majority’s conclusions that (1) standing in a vacuum, McCarthan’s escape conviction was erroneously counted and, (2) at the time he was sentenced, any argument that his escape was not a violent felony was squarely foreclosed by our binding' Circuit precedent. That is, McCarthan has satisfied part (yet only part) of Bryant’s first step. But that is not enough for him to meet the first element of Bryant. I would conclude that to satisfy Bryant’s step one McCarthan was required to show, among other things, that the escape conviction he now challenges is the distinct conviction that triggered the section 924(e) enhancement. On this record, it is clear that it was not.
In all other respects, I join' in- my colleague’s Majority well-reasoned opinion.

. Although in considering whether McCar-than may open the portal for relief under 28 U.S.C. § 2241 I am duty-bound to apply the five-part test outlined in Bryant, I agree with Judge William Pryor's concurrence in Samak v. Warden, FCC Coleman-Medium, 766 F.3d 1271, (11th Cir.2014) that the rule contrived in Bryant is indefensible as a matter of textual interpretation. Id. at 1275-95. Indeed, in my view, the cumbersome nature of that test leads to just the type of confusion we have here surrounding whether McCarthan has established the first requirement of the Bryant test. Without question, as currently constructed, steps one and four of Bryant overlap. That is, the clear language of step one requires a petitioner to show that the distinct conviction that is challenged is the one that triggered the application of section 924(e). And step four requires a showing that retroac-five application of a new Supreme Court rule results in a current sentence exceeding the 10-year statutory maximum which Congress authorized in section 924(a). I understand the argument that my reading of Bryant’s step one may render its inquiry at step four superfluous. But this reading of step one does nothing more (or less) than apply the precise language of Bryant. 738 F.3d at 1274. And, again, the confusion created by comparing steps one and four of Bryant serves as an example of why I believe Judge William Pryor’s point in Samak is both well-reasoned and well-taken.

. The Majority says that the test established in Bryant is "not some independent test that a petitioner must satisfy in addition to the requirement of § 2255(e) to show that the 'rem *1258 edy by motion' is ‘inadequate or ineffective’ to test the legality of [the petitioner’s] detention; rather, the purpose of each step of Bryant is to help us to determine when the 'remedy by motion’ is 'inadequate or ineffective’ to test the legality of [the petitioner’s] detention.” Maj. Op. at 1252 n. 9 (emphasis in original) (citing Bryant, 738 F.3d at 1274). Presumably, the Majority believes this explanation navigates around the problem that the inquiries contained in steps one and four of Biyant are, to some degree, repetitive. But the explanation ignores the point that the Biyant test was expressly formulated to explain how our Circuit interprets the language of the savings clause. That is, Biyant explains how we must read that statutory provision and what a petitioner must show to establish that a prior habeas petition under section 2255 was "inadequate or ineffective to test the legality of his detention.” Here, the Majority's reasoning on this point is circular: we must look to the Biyant test to understand what the language and requirements of the statute are (i.e., what a petitioner must show to take advantage of the savings clause); but we must look back to the statute’s language to understand what the Bryant test means. At best, that explanation is like the snake eating its tail. Moreover, the explanation acknowledges that, on some level, the language of section 2255(e) is either in conflict with Biyant, or inconsistent with its test. Of course, I agree. The Biyant test is itself an incorrect (or, at best, incomplete) textual interpretation.

. The Majority’s analysis of step one completely fails to even reference this "trigger” language. (Maj. Op. at 1246-50). The failure to mention the "trigger” language is a significant omission from the Majority Opinion’s discussion of step one of Biyant.