[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 12-16462; 13-10256
_____

D.C. Docket No. 1:11-cv-23861-CMA

WILFREDO A. ZELAYA,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
WARDEN, OKEECHOBEE CORRECTIONAL INSTITUTION,

Respondents - Appellees.
_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(August 24, 2015)

Before MARCUS and WILSON, Circuit Judges, and THAPAR,[*] District Judge.

MARCUS, Circuit Judge:

---

[*] Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Wilfredo Zelaya, a citizen of Honduras, appeals from the district court's order dismissing his pro se federal habeas petition. Zelaya's petition challenges his federal conviction for illegal reentry after deportation in violation of 8 U.S.C. § 1326(a), (b)(2). He presents a single argument, one which this Court rejected on direct appeal: that he was deported pursuant to an order entered in violation of his due process rights. See United States v. Zelaya, 293 F.3d 1294 (11th Cir. 2002). This time, he comes armed with a new order from an immigration judge rescinding his deportation warrant which, he alleges, proves that the warrant was issued unlawfully. Ultimately, however, we do not address this argument today. Instead, we conclude that the district court's judgment must be affirmed, because Zelaya raised his claim in an improper procedural vehicle.

Rather than filing a motion to vacate his sentence under 28 U.S.C. § 2255, the usual way for a federal prisoner to challenge a federal conviction, Zelaya chose to file a habeas petition under 28 U.S.C. § 2241. In our view, the district court wisely declined to recharacterize his § 2241 petition as a § 2255 motion. Zelaya repeatedly insisted that he wished to file a petition under § 2241. The district court was not obliged to recast Zelaya's § 2241 petition over his express wishes, especially in light of the adverse consequences that can stem from filing a § 2255 motion. Nor did the district court err in dismissing Zelaya's § 2241 petition. Zelaya may only challenge his conviction through a § 2241 petition if he shows

2

that a § 2255 motion would be "inadequate or ineffective to test the legality of his detention," a provision commonly known as the "savings clause."  28 U.S.C. § 2255(e).  Zelaya does not even attempt to show that a § 2255 motion would be inadequate.  Indeed, he cannot, because the claim he raises can readily be brought in a § 2255 motion.  We, therefore, affirm the district court's dismissal of Zelaya's § 2241 petition.  We leave for another day the question whether Zelaya may ultimately obtain relief in the form of a § 2255 motion.

## I.

### A.

The essential facts are these.  Zelaya entered the United States unlawfully in July 1993.  On September 18, 1995, he was arrested and charged by the state of Florida with five counts of sexual battery of a minor, Fla. Stat. § 794.011(2), and held in state custody pending his trial.  Around the time of his arrest, the Immigration and Naturalization Service ("INS") commenced a deportation proceeding against him.  On September 27, INS sent an order to show cause and a hearing notice to Zelaya's last known address and received a return receipt confirming that someone had signed for the documents.  Zelaya never responded.  On April 2, 1996, an immigration judge conducted a deportation hearing in absentia and issued a warrant for Zelaya's deportation.  Over four months later, on August 23, Zelaya pled guilty to the state charges and was sentenced to 364 days

3

incarceration and 15 years probation.  His prison term was wiped out by time served, and he was released that same day to begin serving his probation.

But the INS eventually caught up with Zelaya.  On May 10, 1997, the INS arrested him and processed him for removal pursuant to the outstanding deportation warrant.  Zelaya claims that this was when he first became aware of the deportation order and the proceedings against him.  He was physically deported to Honduras on May 15.  However, he eventually reentered the United States at some point in 1998.  He quickly came to the attention of both state and federal law enforcement.  Florida law enforcement authorities arrested Zelaya in August 1999 and charged him with violating the terms of his probation by reentering the country illegally.  In March 2000, Zelaya's probation was revoked and he was sentenced to five consecutive 30-year prison sentences by a Miami-Dade County circuit court judge.

The federal government followed closely behind.  On August 22, 2000, a federal grand jury sitting in the Southern District of Florida issued a superseding indictment charging Zelaya with one count of illegal reentry by an aggravated felon, in violation of 8 U.S.C. § 1326(a), (b)(2).  Zelaya moved to dismiss the indictment under § 1326(d), arguing that he was deported pursuant to an unlawful deportation order.  Section 1326(d) reads:

Limitation on collateral attack on underlying deportation order

4

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that--

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

Zelaya asserted that the deportation order was unlawful because it was entered without actual notice to him or an opportunity to be heard. Zelaya's motion was denied. After a two-day trial on February 7 and 8, 2001, a jury convicted Zelaya of the offense of illegal reentry. On May 21, the district court sentenced him to 63 months imprisonment, followed by 2 years supervised release.

Zelaya appealed the denial of his motion to dismiss to this Court, again claiming that his deportation order was unlawful. See Zelaya, 293 F.3d 1294. We began by noting that Zelaya had failed to exhaust administrative remedies, as required by § 1326(d), because he never sought the rescission of his deportation order. Id. at 1297. We then rejected his lack of notice argument for three independent reasons. First, we observed that there was no factual basis in the record to establish a lack of actual notice. Id. at 1297-98. Second, we explained that, as a matter of law, there was no flaw in the notice given because INS sent notice to Zelaya's last known address. Id. at 1298. Lastly, we said that Zelaya's

5

deportation proceeding was not fundamentally unfair because Zelaya "ha[d] not made even a suggestion" that his presence at the hearing would have altered the result.  Id.  We affirmed Zelaya's conviction on June 11, 2002.  Zelaya did not file a petition for writ of certiorari, nor did he file a motion to vacate his sentence under 28 U.S.C. § 2255.  Zelaya remains in state custody today, subject to a detainer filed by the U.S. Marshals Service.

Over six and a half years later, on February 23, 2009, Zelaya moved to reopen his immigration proceedings.  Zelaya's motion apparently argued once more that his deportation order was entered in violation of his due process rights.  The Department of Homeland Security ("DHS") did not respond, and an immigration judge granted Zelaya's motion on March 5, 2009, which had the effect of rescinding his prior deportation order.  On August 16, 2011, another immigration judge to whom the case was reassigned issued an order directing Zelaya and the government to file briefs on how they wished to proceed.  In that order, the judge stated (in a concise footnote) that because of the rescission of Zelaya's deportation order, "[Zelaya] can potentially pursue vacating his state and federal convictions for illegal re-entry."  The judge subsequently issued an order on February 15, 2012 terminating Zelaya's deportation proceedings without

prejudice, "per DHS motion pursuant to 8 C.F.R. § 239.2(a)(7)."[1]  We are not aware of any further developments in Zelaya's immigration case.

B.

On October 24, 2011, Zelaya filed the instant pro se habeas petition under 28 U.S.C. § 2241 in the United States District Court for the Southern District of Florida, naming as respondents the Secretary of the Florida Department of Corrections and the Warden of the Okeechobee Correctional Institution.  His § 2241 petition once again sought to challenge his federal conviction for illegal reentry.  This time, however, he asserted that the rescission of his deportation order rendered him "actually innocent of the crime of illegal reentry."  Invoking the savings clause, he averred that the § 2255 motion is "inadequate or ineffective" to challenge his conviction because the "order of rescission changed the material elements of the offense . . . in such a way that [Zelaya] stands convicted for a non-existent offense."  And he requested that he "be discharged from his unconstitutional confinement of restraint and/or remanded to the state court to [be] provided some previously neglected postadjudicative procedure."

---

[1] Section 239.2 is titled "Cancellation of notice to appear," and subsection (a)(7) allows a federal officer to cancel a notice to appear where "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government."  See also 8 C.F.R. § 239.2(c) (allowing an officer to dismiss a case after proceedings have begun on the same grounds).

7

Because Zelaya challenged his federal conviction, the United States Attorney for the Southern District of Florida responded to Zelaya's petition on behalf of the United States. The named state respondents have never responded to Zelaya's petition. The government noted that this Court on direct appeal rejected Zelaya's claim once before. The government asserted that Zelaya failed to qualify for relief under the savings clause. And the government claimed that a § 2255 motion by Zelaya would be time-barred, because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations to file a § 2255 motion. 28 U.S.C. § 2255(f). Zelaya replied that the rescission of his deportation order rendered him actually innocent of the offense of illegal reentry, and his conviction was, therefore, a "fundamental miscarriage of justice" which entitled him to seek relief under the savings clause.

The matter went first to a magistrate judge, who recommended that the petition be dismissed with prejudice. The court concluded that Zelaya's claim would be time-barred if raised in a § 2255 motion because it rested on the same basis as the challenge he asserted before. Zelaya also could not obtain relief under the savings clause, as his claim is not based on a "retroactively applicable Supreme Court decision." Zelaya objected to the magistrate judge's recommendations on two grounds. First, he claimed that his petition was timely because the rescission of his deportation order restarted the federal limitations period. Second, he argued

8

that his petition could not be recharacterized as a § 2255 motion without notice, and claimed once again that a § 2255 motion would be "an inadequate and ineffective remedy." The district court, however, agreed that Zelaya cannot obtain relief under the savings clause, adopting the magistrate judge's recommendations. The court denied Zelaya a certificate of appealability ("COA").

Zelaya then filed two separate notices of appeal in this Court -- one from the dismissal of his petition (No. 12-16462), and one from the district court's denial of a "Motion for New Trial" (No. 13-10256). He also filed pro se motions for certificates of appealability, for appointment of counsel, and to consolidate his appeals. In March 2013, we consolidated his appeals, and in June, we granted a COA and appointed counsel for Zelaya. After Zelaya filed his initial, counseled appellate brief, the government moved to dismiss this appeal for lack of subject-matter jurisdiction, or, alternatively, to vacate the COA. In September 2014, this Court (a) denied the government's motion to dismiss this appeal; (b) vacated our prior June 2013 order granting a COA; (c) denied as unnecessary a COA to the extent Zelaya sought to appeal the dismissal of his § 2241 petition; and (d) granted a COA (the now operative COA) on three issues:

> (1) Whether Zelaya's 2011 petition, challenging his federal § 1326 conviction, is properly construed as a motion to vacate under 28 U.S.C. § 2255(a), and if so, whether it is timely;
>
> (2) If Zelaya's construed § 2255 motion is untimely, whether Zelaya has a valid claim of actual innocence sufficient to excuse that time bar

9

under McQuiggin v. Perkins, 569 U.S. __, 133 S. Ct. 1924 (2013); and

(3) Whether Zelaya's alleged underlying constitutional claim -- that the rescission of the 1996 deportation order and termination of his deportation proceedings in 2012 rendered him actually innocent of the federal § 1326 crime of illegal re-entry after a deportation order and violated his due process rights -- has merit.

We also directed the parties to brief the following question: "If Zelaya's petition is properly brought pursuant to § 2241 or as a construed § 2255 motion, whether he was 'in custody.'" We noted that Zelaya was free to raise any issues pertaining to the dismissal of his § 2241 petition. Lastly, we substituted the United States as the sole respondent, meaning that this appeal pertains only to Zelaya's federal conviction.

## II.

"[T]here are two distinct means of securing post-conviction relief in the federal courts: an application for a writ of habeas corpus (governed by, inter alia, [28 U.S.C.] §§ 2241 and 2254) and a motion to vacate a sentence (governed by [28 U.S.C.] § 2255)." Medberry v. Crosby, 351 F.3d 1049, 1058 (11th Cir. 2003). This case is fundamentally about the relationship between these two statutory schemes. In 1948, Congress enacted § 2255 to alleviate the practical problems caused by the growth of federal habeas corpus litigation. See United States v. Hayman, 342 U.S. 205, 211-17 (1952). Because a habeas petition must be filed in the federal district of incarceration, courts for districts that contained federal

10

prisons were often overwhelmed by habeas proceedings -- proceedings which were frequently conducted far from the location of relevant evidence and witnesses. See id. at 212-14. To solve this problem, Congress required federal prisoners to instead file a motion under § 2255 with the district court that imposed the sentence in the first place. 28 U.S.C. § 2255(a).

Today, the usual remedy for a federal prisoner seeking review of his conviction is a § 2255 motion, rather than a habeas petition. After all, "[a]s a remedy, [§ 2255] is intended to be as broad as habeas corpus." Hayman, 342 U.S. at 217 (quotation omitted). But if, for some reason, § 2255 were to afford an inadequate remedy, the statute also permits a federal prisoner, under limited circumstances, to file a habeas petition under § 2241. Specifically, § 2255(e) stipulates:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e) (emphasis added). This final clause -- the savings clause -- provides a narrow gateway through which a federal prisoner can file a traditional habeas petition under § 2241, rather than a § 2255 motion.

11

In this case, both sides agree that Zelaya filed a pleading styled as a § 2241 petition and invoking the savings clause, rather than a § 2255 motion. The critical questions we must answer are whether the district court should have recharacterized Zelaya's § 2241 petition as a § 2255 motion, and if not, whether Zelaya may file a § 2241 petition through the savings clause. The answer to both questions is no.[2]

## A.

Our first question, then, is how to construe Zelaya's pro se pleading -- was he proceeding under § 2241, or under § 2255. "We review de novo issues of law presented in a certificate of appealability." Medberry, 351 F.3d at 1053. The district court read Zelaya's petition as exactly what it purported to be: a "section 2241 Petition." On appeal, Zelaya argues for the first time, and contrary to what he asserted in the district court, that the court should have instead construed his petition as a § 2255 motion. As we see it, however, the district court committed no

---

[2] We can quickly dispense with two of the other issues presented in this appeal. First, Zelaya is in federal custody because, although he is currently incarcerated in state prison, he is subject to a federal detainer. See Maleng v. Cook, 490 U.S. 488, 493 (1989); Braden v. 30th Judicial Cir. Court of Ky., 410 U.S. 484, 489 n.4 (1973). Second, any error committed by the district court in failing to recharacterize Zelaya's "Motion for a New Trial" as a motion for reconsideration was harmless, because Zelaya did not, and cannot, point to any mistakes of law or fact in the decision below. Cf. Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) ("Since we have concluded that the court did not err in dismissing Jacobs's complaint, it necessarily follows that it did not abuse its discretion in denying Rule 59(e) relief.").

12

error in declining to sua sponte recharacterize Zelaya's § 2241 petition against his express wishes.[3]

In the criminal context, the federal courts liberally construe pro se litigants' pleadings to facilitate their access to relief. Of course, the general rule in the civil context is that "[t]he plaintiff is the master of the complaint." United States v. Jones, 125 F.3d 1418, 1428 (11th Cir. 1997). However, we hold a pro se prisoner's pleadings to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). And we "must look beyond the labels of motions filed by pro se inmates to interpret them under whatever statute would provide relief." Means v. Alabama, 209 F.3d 1241, 1242 (11th Cir. 2000) (per curiam); see also Andrews v. United States, 373 U.S. 334, 337-38 (1963) ("[A]djudication upon the underlying merits of claims is not hampered by reliance upon the titles petitioners put upon their documents." (quotation omitted)). This practice acknowledges the importance of allowing meritorious claims to be heard and decided regardless of mere pleading defects introduced by legally unsophisticated litigants.

---

[3] At oral argument, counsel for Zelaya suggested that this Court had already issued a preliminary ruling that Zelaya's petition must be construed as a § 2255 motion. However, we ruled only that Zelaya's petition, however construed, challenges only his federal conviction, and not his state convictions for violating his probation. Indeed, our order granting the operative COA in this case specifically asks whether Zelaya's petition "is properly construed as a motion to vacate . . . and if so, whether it is timely."

However, recharacterizing a pleading as a § 2255 motion to vacate is a serious matter, and can often do more harm than good.  As the Supreme Court explained in Castro v. United States, "[s]uch recharacterization can have serious consequences for the prisoner, for it subjects any subsequent motion under § 2255 to the restrictive conditions that federal law imposes upon a 'second or successive' (but not upon a first) federal habeas motion."  540 U.S. 375, 377 (2003).  Thus, the Court held that before a federal court may recharacterize a prisoner's pro se pleading as a § 2255 motion, it must notify the prisoner, warn him that the recharacterization will subject any subsequent § 2255 motion to the second or successive motion bar, see 28 U.S.C. § 2255(h), and provide him with an opportunity to withdraw or amend the motion.  Castro, 540 U.S. at 383.  Failure to provide such notice means that the prisoner's recharacterized motion will not be deemed to be his first § 2255 motion for the purposes of federal law.  Id.  Notably, Castro did not hold that a federal court is obliged to recharacterize a pleading as a § 2255 motion, but only that if a court chooses to do so, it must provide the requisite notice.  See id. at 388 (Scalia, J., concurring in part and concurring in the judgment) ("The option [to decline to recharacterize a pleading] is available under the Court's opinion, even though the opinion does not prescribe it.").

In this case, Zelaya evinced an unambiguous desire to proceed under § 2241 from the very beginning.  For starters, Zelaya used a form labeled "§ 2241 Habeas

14

Corpus Petition Form" and explained that § 2255 was "inadequate or ineffective" to challenge his conviction because his claim "cannot be addressed in the criteria of the enumerated exceptions of 2255." He also claimed that "since this conviction is not consistent to statutory interpatation [sic], then this claim is correctly raised in this 2241 proceeding." Indeed, the government's response observed that Zelaya "[did] not even purport to file his Petition pursuant to Section 2255" because such a petition "would be time barred." In his reply, Zelaya reiterated his belief that he was entitled to relief "in accordance to Title 28 U.S.C. § 2241," and asserted that the government provided no evidence that he "had to raise this issue in a Section 2255 motion." He cited this Court's decision in Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999), which considered when a petitioner may rely on the savings clause.[4] Zelaya clearly and repeatedly insisted that he be permitted to proceed under § 2241.

Throughout the proceeding, Zelaya expressly rejected any perceived attempt by the court to recharacterize his petition as a § 2255 motion. The magistrate judge noted that Zelaya's claim, "if raised in a § 2255 motion, would be time barred as outside the one year limitations period," and found that his motion was "an apparent attempt to circumvent" AEDPA's statute of limitations. Zelaya

---

[4] In the alternative, he claimed that newly discovered evidence was "sufficient to restart the one-year time limitations for Section 2255 Motions and Section 2254 Habeas Corpus." But the gravamen of his reply remained his assertion that he was entitled to proceed under § 2241 by virtue of the § 2255(e) savings clause.

15

interpreted these statements as having recharacterized his petition as a § 2255 motion, and objected in the strongest possible terms to the magistrate judge's recommendations.  Specifically, he claimed that he was "entitled to a judicial determination of whether he may proceed under Section 2241," and he reiterated that "2255 offers an inadequate and ineffective remedy."  He also asserted that the magistrate judge "violated [his] constitutional rights in construing [his] 2241 [petition] as a 2255 Motion and dismissing it as time barred," and that the recharacterization of his petition "would . . . prejudice [his] future opportunity to have the well justified grievance adjudicated."

Even on appeal, Zelaya continued to insist that his petition should not be recharacterized as a § 2255 motion.  In his pro se motion for a certificate of appealability, he argued that the district court "should not [have] recharacterized this 2241 Petition into a time barred 2255 Motion."  His position didn't change when he obtained counsel.  In fact, in Zelaya's response to the government's motion to dismiss this appeal for lack of jurisdiction, he characterized the government's assertion that he had conceded that § 2255 provides an adequate remedy as "baffling" and noted that he "repeatedly acknowledged the procedural hurdles imbedded in section 2255."  At nearly every step along the way, Zelaya has maintained that his § 2241 petition cannot and should not be interpreted as a § 2255 motion.

16

Zelaya had good reason to try to seek relief under § 2241, rather than § 2255. As he was well aware, proceeding under § 2255 would have subjected his petition to the one-year statute of limitations in § 2255(f), and his then-recharacterized motion would have served as his first for the purposes of § 2255(h)'s bar on second or successive motions. Moreover, "while a re-characterized motion might be untimely under § 2255(f)(1), it is possible for future events to render a subsequent § 2255 motion timely under § 2255(f)(2)-(4)." Gooden v. United States, 627 F.3d 846, 848 (11th Cir. 2010).[5] "Indeed, this may explain why the motion was filed under a different label in the first place." Id. at 848 n.3. Zelaya provided exactly this rationale -- fear of losing a future opportunity to seek relief -- when pressed by the district court. As we see it, he

---

[5] Specifically, 28 U.S.C. § 2255(f) provides that the statute of limitations governing § 2255 motions begins to run from the latest of the following events:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. Thus, after one year has elapsed since a petitioner's conviction became final, he might "wait for future events to re-start the statute of limitations period" before filing a § 2255 motion. Gooden, 627 F.3d at 848.

17

chose to invoke § 2241, rather than § 2255, partly to avoid the substantial disadvantages associated with filing a § 2255 motion.

Under these circumstances, the district court was not obliged to recharacterize Zelaya's petition, against his will, as a § 2255 motion. Zelaya expressly and repeatedly, and perhaps even strategically, reaffirmed his intention to proceed under § 2241. The district court wisely permitted him to be the master of his own fate. Indeed, Castro itself suggests that the prisoner's choice of pleading must be controlling, because one of the purposes of providing Castro notice is to "giv[e] the litigant an opportunity to contest the recharacterization." 540 U.S. at 382. That, after all, is precisely what Zelaya thought he was doing when he objected to the magistrate judge's recommendations. The district court's decision was wiser still because of the costs recharacterization could have inflicted upon Zelaya. See id. at 386 (Scalia, J., concurring in part and concurring in the judgment) ("[T]he overriding rule of judicial intervention must be 'First, do no harm.'"). Indeed, if the court had informed Zelaya of its intent to recharacterize his petition, and provided him with Castro notice, Zelaya almost surely would have contested the recharacterization once more, and the court would then have been obliged to construe his pleading as a § 2241 petition.

On appeal, Zelaya argues that "[d]istrict courts must construe pro se habeas petitions to be brought under the statute that provides the most direct route to

18

relief." In his view, the district court was obliged to consider every potential statutory avenue of relief, weigh the costs and benefits of each, and decide whether he was entitled to relief under any one of them. This time-consuming and paternalistic approach cannot be the law, and Zelaya cannot point to a single case that authorizes it.[6] Zelaya's proposed rule would place the court in the role of serving as counsel for the pro se litigant -- and as counsel who disregards his client's express wishes to boot. All in all, the district court committed no error in construing Zelaya's § 2241 petition as exactly what it purported to be.

Lastly, there are strong prudential reasons not to recharacterize Zelaya's petition as a § 2255 motion for the first time on appeal. Because the district court evaluated Zelaya's petition under § 2241, it did not consider many of the fact-bound questions that Zelaya now presses before this Court. If we were to treat Zelaya's petition as a § 2255 motion, we would have to decide, in the first instance, (1) whether his motion is timely; (2) if not, whether a showing of actual innocence excuses the § 2255 time bar, see McQuiggin, 133 S. Ct. 1924; (3) whether Zelaya has made such a showing in this case; and (4) whether his claims

---

[6] The only case that comes close is Means v. Alabama, where we explained that federal courts interpret pro se motions "under whatever statute would provide relief." 209 F.3d at 1242. Means, however, is readily distinguishable. In Means, the petitioner filed his petition under 28 U.S.C. § 2254, "attacking a state conviction whose sentence had run that was used to enhance his current federal sentence." Id. However, such a challenge must be filed as a § 2255 motion. The petitioner, therefore, had simply selected the wrong label for his pleading. That is far different from this case, where Zelaya repeatedly claimed he was seeking relief under § 2241, and where there are clear costs and benefits of proceeding under either statutory scheme.

19

ultimately have merit.  We would be forced to do so on a barren record, and without the benefit of any fact-finding by the district court.  "If we were to regularly address questions -- particularly fact-bound issues -- that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).  We, therefore, decline to imagine what might have been had Zelaya presented his claims in the context of a § 2255 motion, rather than a § 2241 habeas petition.

## B.

Next, we consider whether Zelaya qualifies for relief under the savings clause.  "Whether a prisoner may bring a 28 U.S.C. § 2241 petition under the savings clause of § 2255(e) is a question of law we review de novo."  Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253, 1262 (11th Cir. 2013).  "The applicability of the savings clause is a threshold jurisdictional issue, and we cannot reach questions that the district court never had jurisdiction to entertain."  Williams v. Warden, Fed. Bureau of Prisons, 713 F.3d 1332, 1337 (11th Cir. 2013) (alteration adopted and quotations omitted).  The district court concluded that Zelaya cannot bring his claim in a § 2241 petition filed under the aegis of the savings clause.  We agree.

Zelaya bears the burden of showing that a § 2255 motion is "inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255(e); Bryant, 738 F.3d at 1262.  This statutory requirement is "the touchstone of the savings clause." Bryant, 738 F.3d at 1263.  We have explained that "[w]hat makes the § 2255 proceeding 'inadequate or ineffective' for [a petitioner] is that he had no 'genuine opportunity'" to raise his claim in the context of a § 2255 motion.  Id. at 1272.  It is by now abundantly clear that the mere fact that "a defendant faces a procedural bar in his first § 2255 motion[,] such as a limitations period or procedural default," does not render the § 2255 motion itself inadequate.  Id.; see also Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351 (11th Cir. 2008) ("Our cases hold that a prisoner collaterally attacking his conviction or sentence may not avoid the various procedural restrictions imposed on § 2254 petitions or § 2255 motions by nominally bringing suit under § 2241.").

We first interpreted the savings clause in Wofford, 177 F.3d 1236.  The prisoner in that case had already filed a § 2255 motion, and attempted to file a § 2241 petition to avoid the second and successive motion bar.  We considered the plain language of § 2255(e) and its legislative history, and concluded that the provision "was intended to apply in some circumstances where § 2255 relief was unavailable or had been denied for reasons other than practical ones associated with the location of the court."  Id. at 1241.  We adopted the following approach

21

for determining when a federal prisoner may seek relief in the form of a § 2241 petition:

> The savings clause of § 2255 applies to a claim when: 1) that claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

Id. at 1244.  The Wofford approach has the virtue of "harmoniz[ing] two serious concerns that are in some tension with one another."  Bryant, 738 F.3d at 1271. Prisoners must be given "a reasonable opportunity" to challenge their detention, yet applying the savings clause "too broadly" would eviscerate AEDPA's limitations on § 2255 motions.  Id.  Wofford, therefore, allows a prisoner to file a § 2241 petition in a limited class of cases.

We have, however, subsequently questioned the extent to which the Wofford test is binding law.  The prisoner in Wofford sought to challenge his sentence, rather than his conviction.  177 F.3d at 1238.  As we explained in our en banc decision in Gilbert v. United States, which also involved a sentencing challenge, "[t]he actual holding of the Wofford decision . . . is simply that the savings clause does not cover sentence claims that could have been raised in earlier proceedings." 640 F.3d 1293, 1319 (11th Cir. 2011) (en banc).  The test provided by the Wofford court is, therefore, "only dicta" as it applies to challenges to convictions.  Id.  In several subsequent cases, which also involved challenges to sentences, we

22

reiterated that the Wofford test remains dicta. See Bryant, 738 F.3d at 1268 ("We cautioned, however, that this statement in Wofford was dicta . . . ."); Williams, 713 F.3d at 1343 ("[T]he panel [in Wofford] opined in dicta . . . ."); Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1333-34 (11th Cir. 2013) ("[W]e recently retreated from the purported three-factor test enumerated in Wofford . . . .").[7] At the same time, however, "we have never doubted that the savings clause, at the very least, applies to actual-innocence claims due to a conviction for a non-existent offense." Bryant, 738 F.3d at 1281; see also id. at 1268 ("[T]he Wofford panel had . . . actual-innocence-of-the-crime claims in mind . . . ."). Nor have we said whether any other circumstances might permit a prisoner to challenge his

---

[7] In Bryant v. Warden, we established a five-part test for determining whether the petitioner, who claimed that he was sentenced above the statutory maximum, could seek relief under the savings clause. 738 F.3d at 1274. Specifically, we held that the petitioner had to establish:

> (1) throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed [his] distinct prior state conviction that triggered § 924(e) and had squarely foreclosed [his] § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a); (2) subsequent to his first § 2255 proceeding, the Supreme Court's decision in Begay, as extended by this Court to [his] distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed [his] § 924(e) claim; (3) the new rule announced in Begay applies retroactively on collateral review; (4) as a result of Begay's new rule being retroactive, Bryant's current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches his pure § 924(e)-Begay error claim of illegal detention above the statutory maximum penalty in § 924(a).

Id. This test, which is similar to the three-part test we explicated in Wofford, was tailored to the sentencing challenge the petitioner sought to raise.

conviction in a § 2241 petition, rather than a § 2255 motion, short of a change in the governing law as explicated by the Supreme Court.

We need not decide whether Wofford's three-part test sets out the governing standard, nor whether it provides the exclusive test for relief, because Zelaya cannot access the savings clause no matter what test we apply.  If we apply Wofford, as did the district court, Zelaya is not entitled to relief under the savings clause because his claim is not based on "a circuit-law busting, retroactively applicable Supreme Court decision."  Wofford, 177 F.3d at 1245.  His claim -- that he is actually innocent of the offense of illegal reentry because he was deported pursuant to an unlawful deportation order -- was never foreclosed by Circuit precedent, nor subsequently permitted by an intervening Supreme Court decision.  Instead, his claim is based on the Supreme Court's decision in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), which held that a defendant charged with illegal reentry must be afforded some opportunity to challenge his deportation order, id. at 837-39, as well as 8 U.S.C. § 1326(d), which grants defendants that opportunity.  In other words, the legal foundation of Zelaya's claim was the law in 2001, when he was convicted, and in 2002, when we affirmed his conviction on direct appeal.  It remains the law today.  Thus, he cannot show an entitlement to relief under the savings clause based on Wofford.

Even if the Wofford test were not the only way to claim relief under the savings clause, Zelaya does not even attempt to show that § 2255 is "inadequate or ineffective to test the legality of his detention." As Zelaya himself argues, his claim may be brought in a § 2255 motion.[8] See Ivy v. Pontesso, 328 F.3d 1057, 1060-61 (9th Cir. 2003) (explaining that because the petitioner "could have raised his innocence claim in his initial § 2255 petition," he was not "denied an unobstructed procedural opportunity to present it"). Indeed, he spends most of his briefing before this Court attempting to establish that § 2255 is a superior vehicle for challenging his conviction. While Zelaya must contend with the one-year statute of limitations for filing a § 2255 motion, a "limitations period" does not render the § 2255 motion inadequate or ineffective. Bryant, 738 F.3d at 1272. Zelaya has not been deprived of a "genuine opportunity" to challenge his incarceration, and he may not seek relief under the savings clause.

Zelaya's only response is to assert that an actual innocence claim can, by itself, open the gateway to relief under the savings clause. However, we have explained time and again that a federal prisoner may only employ a § 2241 petition

---

[8] Of course, we do not decide whether such a claim would be successful. Nor do we consider whether Zelaya's claim is a "freestanding" actual innocence claim, which is generally insufficient to state a claim to postconviction relief. Cf. Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

25

if he has shown that § 2255 is procedurally inadequate to "test the legality of his conviction."  See, e.g., Turner, 709 F.3d at 1333 n.2 ("Even if a petitioner succeeds in making Wofford's three-part showing, he would then need to demonstrate 'actual innocence.'"); Wofford, 177 F.3d at 1244 n.3 ("Once the savings clause of § 2255 applies to open the portal to a § 2241 proceeding, the proper inquiry in that § 2241 proceeding will be whether the petitioner can establish actual innocence of the crime for which he has been convicted . . . .").  That is, the prisoner must show some sort of procedural defect in § 2255, and not merely assert that he has a particularly weighty substantive claim.

In our view, this rule makes good sense.  The plain language of § 2255 requires that a prisoner show that § 2255 is "inadequate or ineffective."  It does not say that a prisoner can ignore the § 2255 procedure simply because he claims he is innocent.  Zelaya, after all, is free to raise his claims in the form of a § 2255 motion -- a motion which he has never even attempted to file.  However, he may only assert those claims in a § 2241 petition, and avoid the strictures which apply to § 2255 motions, by demonstrating that § 2255 is inadequate.  On this point, our sister circuits have generally agreed.  See, e.g., Stephens v. Herrera, 464 F.3d 895, 898 (9th Cir. 2006) ("Along with many of our sister circuits, we have held that a § 2241 petition is available under the 'escape hatch' of § 2255 when a petitioner (1) makes a claim of actual innocence, and (2) has not had an 'unobstructed

26

procedural shot' at presenting that claim."); see also Lyn S. Entzeroth, Struggling for Federal Judicial Review of Successive Claims of Innocence, 60 U. Miami L. Rev. 75, 101-02 (2005) ("[T]he circuits . . . have focused consistently on two elements that make § 2241 an appropriate remedy: (1) under a substantive change in the law, the federal prisoner is factually innocent, and (2) the prisoner had no prior opportunity to raise his claim."). To allow a defendant to use § 2241 whenever he asserts his innocence, and nothing more, would effectively read § 2255 out of existence.

Lastly, Zelaya's reliance on cases which suggest that an actual innocence claim can excuse a statute of limitations, Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011-12 & n.14 (11th Cir. 2012) (per curiam), or a procedural default, McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011), is misplaced. These cases establish only that an actual innocence claim may excuse a non-jurisdictional procedural bar. Section 2255(e) is not a procedural bar; instead, it imposes a jurisdictional condition on the availability of the § 2241 petition. See Williams, 713 F.3d at 1337-39. Moreover, that condition affects only which statutory mechanism Zelaya may use to challenge his conviction, and not whether he may seek relief at all. Zelaya cannot point to a single case that holds that a petitioner who raises an actual innocence claim is entitled to travel in whatever statutory vehicle he chooses, in disregard of the detailed scheme Congress has

established.  His argument would also prove too much: a prisoner plainly cannot challenge his conviction by filing, say, an ordinary complaint in federal district court.  Absent some suggestion that the statutory scheme is unconstitutional, Zelaya is required to abide by it.

In short, Zelaya may not seek relief through a § 2241 petition, because he cannot establish that the § 2255 motion is inadequate or ineffective to test the legality of his detention.  In reaching this conclusion, we do not decide whether Zelaya's claim of actual innocence has merit.  We hold only that a claim of actual innocence, meritorious or not, cannot by itself open the gateway to § 2241 relief. Zelaya must, instead, seek relief through the familiar process mandated by Congress -- a § 2255 motion.

### III.

In closing, we note that Zelaya is perfectly free to file a § 2255 motion in federal district court raising his actual innocence claim.  He will, of course, have to overcome the one-year statute of limitations, as well as any other procedural bars the government may choose to raise.  He will also have to establish that he is entitled to relief on the merits of his claim.  However, we decline to answer any of these questions in the first instance, without any help from the district court.  The only things we decide today are that Zelaya's pleading must be construed as a

§ 2241 petition, and that the district court, therefore, lacked jurisdiction to consider it.

For these reasons, we affirm the trial court's dismissal of Zelaya's § 2241 petition. We note that the court dismissed the petition <u>with</u> prejudice. However, because failure to meet the savings clause is a jurisdictional defect, the court should have dismissed the petition <u>without</u> prejudice. See, e.g., <u>DiMaio v. Democratic Nat. Comm.</u>, 520 F.3d 1299, 1303 (11th Cir. 2008) (per curiam) ("[W]e AFFIRM the dismissal of DiMaio's complaint for lack of standing. However, this dismissal is necessarily without prejudice."); <u>Boda v. United States</u>, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds. This dismissal is without prejudice."). We, therefore, vacate that portion of the district court's order dismissing Zelaya's petition with prejudice, and remand with instructions to dismiss the petition without prejudice.

**AFFIRMED in part, VACATED in part, and REMANDED with instructions.[9]**

---

[9] In the face of the complicated procedural posture of this case and the important issues that it raises, we find that good cause exists to expand the appointment of counsel for Zelaya beyond the instant § 2241 appeal, to include the filing of a § 2255 motion and any investigation attendant thereto.